STATE OF NORTH CAROLINA v. OTIS REGINALD LYONS

No. 186A91

(Filed 6 December 1991)

**Assault and Battery § 86 (NCI4th); Criminal Law § 904 (NCI4th) — secret assault — two victims — disjunctive instructions — denial of unanimous verdict**

The trial court's disjunctive instructions in a prosecution for malicious assault in a secret manner with a deadly weapon with intent to kill which permitted the jury to return a guilty verdict if it found that defendant committed each element of the offense "upon Douglas Jones and/or Preston Jones" resulted in an uncertain and thus defective guilty verdict in violation of defendant's constitutional right to a unanimous verdict since the gravamen of the offense of maliciously assaulting in a secret manner is the assaulting of a particular individual in that manner; the jury could have returned a verdict of guilty without all twelve jurors agreeing that defendant assaulted a particular individual; and an examination of the whole of the trial does not lead to the conclusion that any ambiguity raised by the flawed instructions was removed. Art. I, § 24 of the N. C. Constitution.

**Am Jur 2d, Assault and Battery §§ 18, 107; Trial § 1753.**

Justice MEYER dissenting.

Justices MITCHELL and WEBB join in this dissenting opinion.

APPEAL by the State pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 102 N.C. App. 174, 401 S.E.2d 776 (1991), which reversed a judgment of imprisonment entered by *Hudson, J.*, at the 27 November 1989 Criminal Session of Superior Court, DURHAM County, upon a jury verdict finding defendant guilty of secret assault, and which ordered a new trial. Heard in the Supreme Court 12 November 1991.

*Lacy H. Thornburg, Attorney General, by Charles J. Murray, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by M. Patricia DeVine, Assistant Appellate Defender, for defendant appellant.*

STATE v. LYONS

[330 N.C. 298 (1991)]

WHICHARD, Justice.

On 1 May 1989 defendant was indicted on counts of malicious assault in a secret manner with a deadly weapon with intent to kill, assault with a deadly weapon, conspiracy to commit the offense of assault with a deadly weapon with intent to kill inflicting serious injury, and two counts of assault with a deadly weapon with intent to kill inflicting serious injury. On 2 October 1989, without prejudice to the State, Judge Britt granted defendant's motion to dismiss the charges for denial of a speedy trial under the Speedy Trial Act, former N.C.G.S. § 15A-701 et seq. On 16 October 1989, defendant was reindicted on the same charges. On 27 November 1989, defendant was tried and found guilty on all charges except the two counts of assault with a deadly weapon with intent to kill inflicting serious injury. The trial court imposed a sentence of twenty years for the secret assault. The other assault charge and the conspiracy charge were consolidated and the court imposed a sentence of ten years to commence at the expiration of the twenty-year sentence.

Defendant appealed to the Court of Appeals, which awarded a new trial because the trial court erred in its instructions on the charge of secret assault. Judge Cozort dissented, and the State exercised its right to appeal based on the dissent. N.C.G.S. § 7A-30(2) (1989). The only issue is whether the instructions on secret assault resulted in a fatally uncertain verdict. We conclude that they did, and we thus affirm the Court of Appeals.

The offenses charged arose from incidents in the late evening and early morning hours of 18-19 March 1989. That evening, a North Carolina Central University (NCCU) fraternity was holding a party at an establishment called the Klubb in Durham. A passing car almost hit Danny McKay while he was standing outside the nightclub with a fraternity brother. The car stopped, defendant got out, and he approached McKay, telling him to "get the fuck out of the street." When McKay's fraternity brother responded to defendant, defendant pointed his hand in the fraternity brother's face, and the brother knocked it away.

Defendant then turned to his partner in the car and asked for his gun. A "very large handgun" was handed to defendant, who held it up to McKay's head while saying "now, what's up" and slapping McKay with his free hand. McKay did not respond, and defendant re-entered the car and drove off.

McKay then re-entered the club and reported the incident to off-duty police officers who were working as security guards for the club. When defendant entered the club about ten minutes later, McKay approached him and struck him, beginning a fight between the two men. The fight was broken up and defendant was escorted outside by the security guards while McKay and his fraternity brothers were retained inside. During questioning by the security guards, defendant pointed at McKay and said, "That's okay, wait, I'm going to burn you; I'm going to burn you." Another witness testified that she heard defendant say, "I'm going to get you, man, I'm going to get you, I want you; I'm going to get you." The guards kept McKay and his fraternity brothers at the club until defendant had left. McKay did not see defendant again that night.

A few minutes later, McKay and approximately ten fraternity brothers left the club and walked down the street. Suddenly they heard shots. Two to six shots were fired. McKay was not hit, but two of his fraternity brothers, Douglas Jones and Preston Jones, were wounded.

Defendant's girlfriend, Lynette Osborne, testified that she and a friend, Toni Lowery, were standing outside the club when defendant left after his fight with McKay. Defendant, whose shirt was bloody, said, "[T]hey jumped me, they got me." About this time, defendant's friends, Tim Little and Wallace Daye, also appeared outside the club. Daye went into the club, then came back out and said to defendant, "I've seen 'em . . . I seen who they is." Osborne, Lowery, and defendant then walked to the parking lot and got in defendant's car. A few minutes later, Daye approached the car, opened the door, and said, "Here they come Bop (defendant's nickname), we're fixing to get them." Little said, "I'm going to burn them, Bop, I'm going to burn them." According to Osborne, defendant replied that it was not worth it. Osborne then saw Daye loading a gun. She jumped from the car and saw Little hiding some distance away. Osborne testified that Little fired his gun twice and Daye fired his once, but defendant did not shoot anyone.

Another witness, Tonya Weaver, testified that she was at the club that night and was walking with a friend a short distance ahead of the fraternity brothers as they left the club. Weaver saw defendant, Little, and Daye running from the parking lot. They ran past her, defendant "brisked" her, and she saw a silver

handle, which appeared to be a gun handle, sticking from defend-ant's jacket pocket. The three men jumped into some nearby bushes. The fraternity brothers approached and "[t]hey walked right into the gunshots." Weaver heard approximately five gunshots, and she was able to see the flashes of more than two guns as they fired.

A police officer testified that he responded to a call reporting a disturbance at the club. After checking the gunshot victims, he learned from another officer that a car in the parking lot was believed to be that of the people who did the shooting. When officers checked inside the car, they found two pieces of paper bearing defendant's name, as well as a .45-caliber automatic hand-gun on the rear passenger floorboard.

Defendant offered evidence, including his own testimony, tend-ing to show that McKay provoked the initial confrontation in front of the club, though defendant admitted threatening McKay with a gun and slapping him. After the first confrontation with McKay, defendant said he went somewhere and had approximately nine mixed drinks before returning to the Klubb. He had two guns in his car, his own and one belonging to Little. Defendant testified that he told Daye not to "burn" McKay and his fraternity brothers, as Daye was threatening to, because "they gonna think I did it." While defendant testified that he actually did not see who did the shooting, several of defendant's witnesses stated that Little and Daye fired the shots.

Little testified that neither defendant nor Daye was involved in the shooting, that he, Little, ran down off the parking deck toward the crowd of fraternity brothers with two men other than defendant or Daye, and that he, Little, fired the only three shots fired. The State attempted to impeach Little by questioning him about his close friendship with defendant.

The only issue is whether the instructions in a disjunctive form on the charge of maliciously assaulting in a secret manner were fatally ambiguous, thereby resulting in an uncertain verdict in violation of defendant's right to a unanimous verdict. N.C. Const. art. I, § 24; N.C.G.S. § 15A-1237(b) (1988). The portion of the indict-ment pertinent to the instructions reads as follows:

> The . . . defendant . . . unlawfully, willfully and feloniously did in a secret manner maliciously commit an assault and bat-tery with a deadly weapon, a handgun, upon Douglas Jones

*and* Preston Jones by waylaying or otherwise with intent to kill inflicting serious bodily injury. [Emphasis added.]

In contrast to the conjunctive form of the indictment, the trial court instructed the jury as follows:

Now, I charge for you to find the defendant · guilty of malicious assault and battery in a secret manner with a deadly weapon with the intent to kill, the State must prove five things beyond a reasonable doubt.

First, that the defendant committed an assault and battery upon Douglas Jones *and/or* Preston Jones by intentionally shooting him with a handgun.

Second, that the defendant used a deadly weapon. A deadly weapon is a weapon which is likely to cause death or serious bodily injury. Once again, a handgun is a deadly weapon.

Third, that the defendant committed the assault and battery upon Douglas Jones *and/or* Preston Jones in a secret manner. The assault and battery would be in a secret manner if Douglas Jones *and/or* Preston Jones was unaware of the defendant's intent to commit the assault and battery until it was too late to defend himself.

Fourth, that the defendant had the intent to kill Douglas Jones *and/or* Preston Jones.

And fifth, that the defendant acted maliciously. That is with ill-will, hatred or animosity towards Douglas Jones *and/or* Preston Jones. [Emphasis added.]

The Court of Appeals majority held that under *State v. Diaz*, 317 N.C. 545, 346 S.E.2d 488 (1986), the disjunctive instructions resulted in an ambiguous and uncertain verdict in violation of defendant's right to be convicted by a unanimous jury. Judge Cozort, dissenting, argued that *State v. Hartness*, 326 N.C. 561, 391 S.E.2d 177 (1990), rather than *Diaz*, controls. We agree with the majority in the Court of Appeals.

There is a critical difference between the lines of cases represented by *Diaz* and *Hartness*. The former line establishes that a disjunctive instruction, which allows the jury to find a defendant guilty if he commits either of two underlying acts, *either of which is in itself a separate offense*, is fatally ambiguous because

it is impossible to determine whether the jury unanimously found that the defendant committed one particular offense. The latter line establishes that if the trial court merely instructs the jury disjunctively as to various alternative acts *which will establish an element of the offense*, the requirement of unanimity is satisfied. The instructions here fall into the *Diaz* line, in which a disjunctive instruction leads to an ambiguous verdict.

The defendant in *Diaz* was charged with trafficking in marijuana in violation of the following statute:

Any person who sells, manufactures, delivers, transports, or possesses in excess of 50 pounds (avoirdupois) of marijuana shall be guilty of a felony, which felony shall be known as "trafficking in marijuana" . . . .

N.C.G.S. § 90-95(h)(1) (1990). As in the case at bar, the instructions were in the disjunctive, namely, whether the defendant "knowingly possessed or knowingly transported" marijuana. *Diaz*, 317 N.C. at 553, 346 S.E.2d at 493-94. We held that the instructions deprived the defendant of his right to be convicted by a unanimous jury. We first noted that the sale, manufacture, delivery, transportation, and possession of fifty pounds or more of marijuana are separate trafficking offenses for which a defendant may be separately convicted and punished. *Id.* at 554, 346 S.E.2d at 494. We then reasoned that by instructing the jury as it did the trial court submitted two possible crimes to the jury, of either or both of which, due to the disjunctive instruction, the jury could have found the defendant guilty. *Id.* We concluded that it was impossible to determine whether the jurors unanimously found that the defendant possessed the drugs, transported them, both possessed and transported, or whether some jurors found that the defendant possessed and some found that he transported. *Id.*

*Diaz* was one in a line of cases which establishes that a verdict of guilty following submission to the jury in the disjunctive of two or more possible crimes in a single issue is ambiguous and fatally defective. *Id.* at 553, 346 S.E.2d at 494; *State v. McLamb*, 313 N.C. 572, 577, 330 S.E.2d 476, 480 (1985); *State v. Albarty*, 238 N.C. 130, 133, 76 S.E.2d 381, 383 (1953). In *Albarty*, the defendant was charged under N.C.G.S. § 14-291.1, which made it a misdemeanor to "sell, barter or cause to be sold or bartered, any ticket . . . in any lottery . . . ." The Court held that "barter" and "sell" as used in the statute are not synonymous, and that an accused

may violate the statute in any of four ways: 1) by selling; 2) by bartering; 3) by causing another to sell; or 4) by causing another to barter. *Albarty*, 238 N.C. at 132, 76 S.E.2d at 383. Because the criminal complaint was drawn in the disjunctive, the verdict was invalid for uncertainty in failing to be sufficiently definite and specific in identifying the crime of which the defendant was convicted. *Id.* at 133, 76 S.E.2d at 383.

Similarly, in *McLamb* we held that a verdict that the defendant "feloniously did sell *or* deliver" cocaine is "fatally defective and ambiguous." *McLamb*, 313 N.C. at 577, 330 S.E.2d at 480. We did so because sale and delivery are distinct and separate offenses. *Id.* (citing *State v. Dietz*, 289 N.C. 488, 223 S.E.2d 357 (1976)). Indeed, the State conceded the point and did not even seek review of that portion of the Court of Appeals decision. *Id.*

In *McLamb*, the defendant, too, made a concession, which leads into the *Hartness* line of cases. He also was charged with *possession* with intent to "sell or deliver." Cognizant of the Court's then recent opinion in *State v. Creason*, 313 N.C. 122, 326 S.E.2d 24 (1985), he conceded that the portion of the indictment charging him with the possession crime was not fatally ambiguous. *Id.*

*Creason*, which preceded *Hartness* by five years, interpreted N.C.G.S. § 90-95(a)(1), which makes it unlawful for anyone "[t]o manufacture, sell or deliver, or possess with intent to manufacture, sell or deliver, a controlled substance . . . ." N.C.G.S. § 90-95(a)(1) (1990). The Court held that the intent of the legislature in drafting this statute was twofold: "(1) to prevent the manufacture of controlled substances, and (2) to prevent the transfer of controlled substances from one person to another." *Creason*, 313 N.C. at 129, 326 S.E.2d at 28. The transfer which the legislature sought to prevent could be accomplished by either a sale or a delivery; thus, in the context of this statute, the possession of narcotics with the intent to "sell or deliver" is one offense. *Id.* The Court therefore concluded that "sell" and "deliver" are synonymous within the intent of this legislation, as the gist of the offense is possession with the intent to transfer the contraband. *Id.* at 130, 326 S.E.2d at 28; *cf. State v. Moore*, 327 N.C. 378, 382-83, 395 S.E.2d 124, 127 (1990) (while recognizing that "sell" and "deliver" are not synonymous, the Court held that the gravamen of the offense at issue was the transfer of the drug; unanimity concerns thus were not implicated by the method of transfer). Because the defendant

was faced with only *one* offense—possession of LSD with intent to sell or deliver—the Court held that the disjunctive phrasing of the verdict was not improper and the verdict did not lack unanimity. *Creason*, 313 N.C. at 130-31, 326 S.E.2d at 29.

While holding that possession with intent to sell or deliver is one offense, the Court reiterated that the sale and delivery of narcotics are separate offenses. *Id.* at 129, 326 S.E.2d at 28. It found that the grammatical construction of section 90-95(a)(1) supported its conclusion that intent to transfer is the gravamen of the offense of possession with intent to transfer. That construction sets off "sell or deliver" by commas to form *a* phrase that modifies the required intent. *Id.* at 129-30, 326 S.E.2d at 28.

In *Hartness*, the defendant was charged with taking indecent liberties with children. A person is guilty of this offense if he

> [w]illfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire . . . .

N.C.G.S. § 14-202.1(a)(1) (1986). The instructions were:

> An indecent liberty is an immoral, improper, or indecent touching or act by the defendant upon the child, or an inducement by the defendant of an immoral or indecent touching by the child.

*Hartness*, 326 N.C. at 563, 391 S.E.2d at 178. One of the child victims testified that the defendant both touched him and made him touch the defendant. The defendant contended that the disjunctive instructions of the trial court rendered the verdict potentially nonunanimous, as the jury could have split on which sexual misconduct took place. We rejected the defendant's contention and declined to apply the *Diaz* analysis to instructions given in indecent liberties cases.

The reasoning of *Diaz* is misapplied in an indecent liberties case, we said, because unlike the trafficking statute at issue in *Diaz*, which listed activities in the disjunctive, each of which is a discrete criminal offense, the indecent liberties statute simply proscribes " 'any immoral, improper, or indecent liberties.' " *Hartness*, 326 N.C. at 564-65, 391 S.E.2d at 179. Under that statute, even if some jurors found that the defendant engaged in one kind of sexual misconduct, while others found that he engaged in another,

"the jury as a whole would unanimously find that there occurred sexual conduct within the ambit of 'any immoral, improper, or indecent liberties.'" *Id.* at 565, 391 S.E.2d at 179.

As in *Creason*, which we cited in *Hartness*, we found that the gravamen of the offense at issue was its *intent* — the performing of some sexual act with a child "'for the purpose of arousing or gratifying sexual desire.'" *Id.* at 567, 391 S.E.2d at 180. As in *Creason*, we held that the particular act performed (in *Creason* the sale or delivery) was immaterial because the evil the legislature sought to prevent was the taking of any kind of sexual liberties with a child in order to arouse or gratify sexual desire. *Id.*

In *Hartness*, the Court expressly recognized a line of cases, in which *Hartness* and *Creason* fall, "in which a single wrong is established by a finding of various alternative elements." *Id.* at 566, 391 S.E.2d at 180. The Court contrasted that line with the line represented by *Diaz*, in which the risk of nonunanimous verdicts arises when instructions are given in the disjunctive because the statutes at issue list activities, all of which are discrete criminal offenses. *Hartness*, 326 N.C. at 564-65, 391 S.E.2d at 179.

The other case the Court expressly placed in the *Hartness* line is *Jones v. All American Life Ins. Co.*, 312 N.C. 725, 325 S.E.2d 237 (1985). In that case we held that submission of a disjunctive issue of whether the plaintiff killed or procured the killing of an insured in an action on a life insurance policy did not prevent a unanimous verdict. We so held because it was clear from the instructions that all twelve jurors had to find that the plaintiff participated in the insured's death by one or the other alternative means by which the plaintiff would be barred from recovery of the insurance proceeds under the common law "slayer" doctrine. *Jones*, 312 N.C. at 738, 325 S.E.2d at 244. We reasoned that "[b]ecause plaintiff's participation in the killing of the insured by either of the two alternatives bars her from recovering . . . , it is only necessary that the jury agree unanimously that she so participated." *Id.*

Having carefully reviewed the two lines of cases, we conclude that the *Diaz* rather than the *Hartness* analysis applies here. As in *Diaz*, the trial court in this case instructed the jury disjunctively, permitting consideration in one issue of two possible crimes for which defendant could be separately convicted and punished: (1) a malicious secret assault on Douglas Jones, and (2) a malicious

secret assault on Preston Jones. In fact, the "and/or" instructions permitted four possible verdicts—1) guilty of assault on Douglas Jones; 2) guilty of assault on Preston Jones; 3) guilty of assault on both; or 4) guilty of assault on Douglas in the view of some jurors, while guilty of assault on Preston in the view of others.

The instructions thus were fatally ambiguous because the jury could have returned a verdict of guilty without all twelve jurors agreeing that defendant assaulted a particular individual. For example, six jurors could have found that defendant secretly assaulted Douglas Jones while the other six found that defendant assaulted Preston Jones. Because it is impossible to determine what the jury found and whether the verdict was unanimous, we hold that the instructions resulted in an uncertain and thus defective verdict in violation of defendant's constitutional right to be convicted by a unanimous jury.

Further, the gravamen of the offense of maliciously assaulting in a secret manner is the assaulting of a particular individual in that manner. In contrast, the gravamen of the offenses discussed in the *Hartness-Creason* line of cases—the taking of indecent liberties with children for the purpose of arousing or gratifying sexual desire and the possession of drugs with the intent to place them into commerce by transferring them through either sale or delivery—is the intent or purpose of the defendant. *Hartness*, 326 N.C. at 567, 391 S.E.2d at 180; *Creason*, 313 N.C. at 129, 326 S.E.2d at 28. Not only is the particular conduct not the gravamen of the offense, but it is only one of alternative ways to establish a single wrong. *Hartness*, 326 N.C. at 566, 391 S.E.2d at 180; *Creason*, 313 N.C. at 129-30, 326 S.E.2d at 28; *Jones*, 312 N.C. at 738, 325 S.E.2d at 244. The disjunctive instructions in *Diaz* and in the case at bar were fatally defective because they would allow a jury to return a verdict of guilty for a single offense if the jury found that the defendant committed either of two underlying acts, either of which is in itself a separate crime.

The Court noted in *Diaz* that the submission of instructions in the disjunctive will not always render a resulting verdict fatally ambiguous. In some cases, "[a]n examination of the verdict, the charge, the initial instructions by the trial judge to the jury . . . , and the evidence may remove any ambiguity created by the charge." *Diaz*, 317 N.C. at 554, 346 S.E.2d at 494. An example is *State v. Foust*, 311 N.C. 351, 317 S.E.2d 385 (1982), *overruled*

STATE v. LYONS

[330 N.C. 298 (1991)]

*by State v. Diaz,* 317 N.C. 545, 346 S.E.2d 488 (1986), *revived by State v. Hartness,* 326 N.C. 561, 391 S.E.2d 177 (1990).[1]

The indictment in *Foust* charged the defendant with unlawfully engaging in a sexual act with the victim, without specifying which act was performed. The State's evidence tended to show the commission of anal intercourse and fellatio. The trial court instructed the jury that the first element the State had to prove was that a sexual act occurred, which the trial court defined as "oral sex or anal sex." The trial court went on to stress the necessity of unanimity.

While this Court agreed with the defendant that it appeared from the disjunctive instructions that the jury could have convicted him without being unanimous as to what sex act(s) he performed, it held that the whole of the instructions

> obviously required a verdict of not guilty if all twelve jurors were not satisfied beyond a reasonable doubt that the defendant participated in either fellatio or anal intercourse, or both. We believe the evidence amply sustains a conviction for either or both offenses. Nothing in the record indicates any confusion, misunderstanding or disagreement among the jury members regarding the unanimity of the verdict. The convincing inference is that the jury unanimously agreed that defendant engaged in both oral and anal sex.

*Foust,* 311 N.C. at 360, 317 S.E.2d at 390. In *Foust,* therefore, the Court concluded that any ambiguity created by the disjunctive charge was removed.

The case at bar does not permit the same conclusion. Unlike the evidence in *Foust,* which provided a clear basis for concluding that the jurors agreed that defendant engaged in both oral and anal sex, the evidence here is sketchy and unclear. No one testified that he or she actually saw defendant fire into the crowd; the strongest evidence against defendant was the testimony of Tonya Weaver, who said she saw a gun handle emerging from defendant's

---

1. *Foust* was temporarily overruled in *Diaz,* 317 N.C. at 555, 346 S.E.2d at 495, because the Court saw it as inconsistent with the *Diaz* result. Later, however, the Court revived *Foust. Hartness,* 326 N.C. at 565-66, 391 S.E.2d at 179-80. It is now clear that *Foust* is not at variance with *Diaz,* but is one of those cases alluded to therein in which an overall examination of the trial reveals that any ambiguity created by the flawed instructions is removed.

STATE v. LYONS

[330 N.C. 298 (1991)]

pocket and saw flashes from more than two guns. Countering her testimony was testimony from defendant, his girlfriend, and Little, who confessed to firing all the shots. The shooting occurred late at night in a crowd scene. No direct evidence established that defendant in fact shot both victims. Clearly, this is not the kind of exceptional case where an examination of the whole of the trial leads to a conclusion that any ambiguity raised by the flawed instructions is removed.

Our holding that the disjunctive instructions here were fatally defective is further grounded in the statute defendant is charged with violating. It provides:

> If any person shall in a secret manner maliciously commit an assault and battery with any deadly weapon upon another by waylaying or otherwise, with intent to kill *such other person*, notwithstanding *the person* so assaulted may have been conscious of the presence of his adversary, he shall be punished as a Class F felon.

N.C.G.S. § 14-31 (1986) (emphasis added). If the language of the statute was merely that a person is guilty of this crime if he "maliciously commit[s] an assault and battery upon *another*," the State might have a stronger argument. The statute specifies, however, that a person has to assault another "with intent to kill *such other person*," and it refers explicitly to "*the person* so assaulted." This language is clearly indicative of legislative intent that to find a defendant guilty of this offense, the jury must find unanimously that he committed the assault on a particular individual.

For the reasons stated, we affirm the decision of the Court of Appeals, which reverses the judgment of the trial court on the secret assault charge and remands the case to the Superior Court, Durham County, for a new trial on that charge.

Affirmed.

Justice MEYER dissenting.

I dissent from the majority opinion because I do not agree that the trial court's instructions on the charge of malicious assault in a secret manner with a deadly weapon ("secret assault") rendered the jury's verdict fatally ambiguous. The majority seems to lose sight of the fact that there was no question whatsoever of the

STATE v. LYONS

[330 N.C. 298 (1991)]

identity of the two victims and that *both* were wounded. The mere possibility that some jurors may have found defendant guilty based on a belief that one of the victims was shot and other jurors may have found him guilty based on a belief that the other victim was shot does not affect the unanimity of the jury's decision that defendant committed a secret assault. Moreover, the evidence presented at defendant's trial clearly rebuts the possibility that the trial court's instructions, even if error, may have resulted in a nonunanimous verdict. Because the jury unanimously found defendant guilty of secret assault, the majority errs in concluding that defendant is entitled to a new trial.

I.

In our recent opinion in *State v. Hartness*, 326 N.C. 561, 391 S.E.2d 177 (1990), this Court held that it was not error to instruct the jury disjunctively as to various alternative acts, either of which would establish an element of the offense charged. Although some of the jurors may find the defendant guilty based on their belief that the defendant committed act *A* and some may base their vote of guilty on the defendant's participation in act *B*, such alternative findings do not render the jury's verdict nonunanimous as long as the alternative acts found establish an element of the offense and do not, in and of themselves, constitute a separate offense.

As the majority opinion illustrates, it is often a difficult task to determine when alternative acts constitute separate offenses, rendering a guilty verdict fatally ambiguous, or merely establish an element of the offense charged. In order to make such a determination, the Court must examine the statute proscribing the alleged conduct and the legislature's intent in proscribing the conduct. Where, as in *State v. Diaz*, 317 N.C. 545, 346 S.E.2d 488 (1986), the statute enumerates several proscribed activities as discrete criminal offenses, a jury verdict based on the different activities does not meet the requirement that a conviction be based on a unanimous jury verdict. *Hartness*, 326 N.C. at 564, 391 S.E.2d at 179; *see Diaz*, 317 N.C. 545, 346 S.E.2d 488. Where, however, a defendant is convicted of one offense based on a statute that proscribes a single wrong that may be proved by evidence of the commission of any one of a number of acts, the unanimity requirement is met as long as each of the jurors concludes that the defendant committed one or more acts satisfying the elements of the

single proscribed offense. *Hartness*, 326 N.C. at 566-67, 391 S.E.2d at 180.

As in *Hartness*, the defendant in this case was convicted under a statute proscribing a single offense that may be established by a finding of any one of several alternative acts. Defendant was indicted, tried, and convicted for violating N.C.G.S. § 14-31. This statute provides that a person is guilty of a Class F felony if he "in a secret manner maliciously commit[s] an assault and battery with any deadly weapon upon another by waylaying or otherwise, with intent to kill such other person." N.C.G.S. § 14-31 (1986). In *State v. Hill*, 287 N.C. 207, 214 S.E.2d 67 (1975), we set forth the following five elements, the proof of which is required to support a conviction for secret assault as proscribed by N.C.G.S. § 14-31: "(1) secret manner; (2) malice; (3) assault and battery; (4) deadly weapon; and (5) intent to kill." *Id.* at 216-17, 214 S.E.2d at 74.

Just as in *Hartness*, wherein we concluded that the offense of indecent liberties may be proved by several different acts, a violation of N.C.G.S. § 14-31 may be proved by showing an assault and battery upon one or more victims. In *Hartness*, we concluded that it was immaterial that the jurors may have differed as to which specific sexual act they believed the defendant to have committed as long as all of the jurors found that the defendant had committed a sexual act. We stated:

> The risk of a nonunanimous verdict does not arise in cases such as the one at bar because the statute proscribing indecent liberties does not list, as elements of the offense, discrete criminal activities in the disjunctive . . . .
>
> . . . .
>
> . . . Defendant's purpose for committing such act is the gravamen of this offense; the particular act performed is immaterial.

*Hartness*, 326 N.C. at 564, 567, 391 S.E.2d at 179, 180.

The *Hartness* reasoning applies equally well here. The gravamen of the offense of secret assault is that an assault is committed in a secret manner and with intent to kill another person. *See* N.C.G.S. § 14-31 (1986). The identity of the victim of a secret assault is immaterial. That jurors may disagree upon the victim's identity

would not affect the unanimity of the jury's decision that defendant committed the assault for which he was tried and convicted.

The majority errs in concluding that "the *Diaz* rather than the *Hartness* analysis applies" to this case. *Diaz* involved a drug trafficking statute that proscribed the sale, manufacture, delivery, transportation, and possession of marijuana. The trial court instructed the jury that it could find defendant guilty of trafficking in marijuana if it found that defendant had either "knowingly possessed or knowingly transported marijuana." *Diaz*, 317 N.C. at 553, 346 S.E.2d at 493-94. After noting that the statute expressly provided that the alternative acts of selling, manufacturing, delivering, transporting, and possessing marijuana *each constituted separate trafficking offenses*, we held that the specified acts could not be submitted as alternative acts to prove a charge of trafficking in marijuana. *Id.* at 554, 346 S.E.2d at 494. In *Hartness*, decided four years after *Diaz*, we revived a line of cases overruled by *Diaz*, thereby limiting the *Diaz* holding to those cases involving statutes proscribing several enumerated acts *as separate offenses*.

To apply *Diaz* to the case at bar ignores the very intent and purpose of N.C.G.S. § 14-31. Unlike the trafficking statute at issue in *Diaz*, N.C.G.S. § 14-31 does not proscribe numerous activities, each of which constitutes a separate offense. As noted earlier, the gravamen of the offense of secret assault is that an assault is committed in a secret manner and with intent to kill another person. The mere fact that the jurors in this case may have disagreed as to the identity of the victim of defendant's assault is immaterial because each juror found that defendant had committed a secret assault upon another person.

## II.

Furthermore, even if I agreed with the majority that the assault upon the two victims in this case constituted separate offenses that could not be submitted as alternative bases to support a conviction of secret assault, I could not agree with the majority's conclusion that a nonunanimous verdict may have resulted in this case. Any error in the trial court's instructions must be considered harmless when viewed in light of the evidence presented at defendant's trial. *See State v. Diaz*, 317 N.C. at 554, 346 S.E.2d at 494 (recognizing that the evidence in a particular case may remove any ambiguity created by an instruction charging crimes in the disjunctive).

**STATE v. LYONS**

[330 N.C. 298 (1991)]

It is important to note that in this case the evidence of record reveals that there was *no question concerning the identity of the victims or that each was shot* as a result of a secret assault. Evidence presented by the State showed that the two victims were walking with approximately nine other people when they were shot without warning. Several witnesses, including several friends of defendant's, also testified that they saw the shooting spree during which the victims were injured.

None of the evidence presented by defendant would have supported a finding that defendant assaulted only one of the two victims. Defendant did not deny his involvement in the events leading up to the shooting. In fact, defendant testified that he had been involved in a fight with Danny McKay, a fraternity brother of the victims, earlier in the evening on which the victims were shot and that he had pulled a gun on McKay and slapped him. Defendant further admitted that he was present at the time of the shooting. Defendant did not deny assaulting one victim while admitting participation in the assault of the other. Rather, defendant's defense theory rested solely on testimony that he and his friends provided. Based on this testimony, defendant claimed that he did not participate in the actual shooting that injured the victims. It is evident that the jury disbelieved defendant's evidence because it unanimously rejected the evidence by its verdict finding defendant "Guilty of Maliciously Assaulting in a Secret Manner."

Had the trial court instructed the jury that a verdict of guilty must be supported by a finding that defendant committed a secret assault upon both Douglas Jones *and* Preston Jones, the outcome of this case would have been the same. The uncontradicted and manifestly credible evidence showed that both Douglas Jones and Preston Jones were victims of an assault and battery committed in a secret manner. Having concluded that defendant participated in the shooting spree that resulted in the injuries suffered by both victims, the jury could only have reasonably concluded that defendant was guilty of a secret assault upon both of the victims.

Ample evidence was presented at defendant's trial to support a jury finding as to each of the elements of the crime of secret assault. Based upon this evidence, the jury returned a verdict finding defendant guilty of secret assault. I find it beyond all reason and logic to conclude, as does the majority, that the mere fact that two persons were victimized by defendant's assault requires

reversal of defendant's conviction. For these reasons, I dissent from the majority opinion and vote to reverse the decision of the Court of Appeals and remand this case for reinstatement of the judgment of the trial court.

Justices MITCHELL and WEBB join in this dissenting opinion.