STATE OF NORTH CAROLINA v. STANFORD ANTHONY SHANE

No. 455A82

(Filed 27 September 1983)

1. **Constitutional Law § 48— effective assistance of counsel—former representation by codefendant's counsel—former partnership between attorneys for defendant and codefendant**

   Defendant was not denied the effective assistance of counsel at his second trial because the attorney for a codefendant, who entered a plea of guilty and testified against defendant at the second trial, had represented defendant at a bond reduction hearing and had formerly been in partnership with the attorney who represented defendant at his first trial where defendant showed no actual prejudice from the codefendant's attorney's former representation of him or from the attorney's former association with defendant's attorney at his first trial, and where defendant did not raise any objection at trial to the codefendant's counsel.

2. **Constitutional Law § 48— effective assistance of counsel—failure to call witness**

   A defendant is not denied the effective assistance of counsel by the failure of his counsel to call a witness when the decision not to call the witness is shown by the record to be defendant's own.

3. **Constitutional Law § 80; Criminal Law § 138.1— cruel and unusual punishment—life imprisonment for sexual offense—more lenient sentence to codefendant**

   Imposition of a sentence of life imprisonment for a first degree sexual offense did not constitute cruel and unusual punishment because the sexual acts occurred between a defendant who spent several years in public service and a person he claims sold sexual favors. Nor did defendant's sentence of life imprisonment for first degree sexual offense and his consecutive sentence of twenty years for attempted first degree sexual offense constitute cruel and unusual punishment because defendant is black and his codefendant, a white man, received only two consecutive ten-year sentences where the codefendant entered a plea bargain with the State in which he agreed to plead guilty only to attempted second degree sexual offenses.

BEFORE *Judge Robert H. Hobgood,* at the April 5, 1982 Criminal Session of Superior Court, CUMBERLAND County. The defendant was found guilty of first degree sexual offense and attempted first degree sexual offense. He was sentenced to the mandatory life sentence for the sexual offense and a twenty-year sentence for the attempted sexual offense to begin at the expiration of the life sentence. The defendant's motion to bypass the Court of Appeals on the twenty-year sentence was allowed April 27, 1983. He appealed the life sentence directly to this Court as a matter of right.

*Rufus L. Edmisten, Attorney General, by Jane P. Gray, Assistant Attorney General, for the State.*

*Rudolph Lion Zalowitz, pro hac vice, and Everette Noland, for the defendant-appellant.*

MITCHELL, Justice.

The defendant through several assignments of error brings two main issues before this Court on appeal. He first contends that a conflict of interest, which he claims arose out of the representation by the attorney for his codefendant, was a per se denial of his constitutional right to effective assistance of counsel. Additionally, he claims he was denied effective assistance of counsel because his own attorney at trial did not call witnesses who were able and willing to testify in his behalf.

Secondly, the defendant contends that his sentence, a life sentence for first degree sexual offense and twenty years for attempted first degree sexual offense, violated the Eighth Amendment ban on imposing cruel and unusual punishment. We find no error.

I.

The facts surrounding the crimes for which the defendant Shane was charged and convicted are not relevant to the issues before us, but a summary of that evidence can be found in this Court's decision concerning the first trial of this matter. *State v. Shane,* 304 N.C. 643, 285 S.E. 2d 813 (1982). In that decision this Court reversed on unrelated grounds the sexual offenses convictions. We remanded for a new trial on those charges and ordered

new sentencing hearings on robbery convictions for this defendant and his codefendant, Dean Williams.

The defendants Shane and Williams were tried jointly in the first trial for offenses allegedly committed on February 10, 1982 by both men. Following their arrest, Attorney Jack E. Carter represented defendant Shane in his motion to reduce bail. During the first trial Carter, then of the law firm of Barrington, Witcover, Carter & Armstrong, represented defendant Williams. Shane's attorney was Carl A. Barrington, Jr., a member of the same law firm.

In the first trial both defendants denied that they had had weapons and that they had committed the offenses charged. In the course of that trial, upon request by the State, the court questioned each defendant about whether he objected to being represented by partners in the same law firm. Each defendant replied that he had no objection.

Between the first and second trials, Carter left the law firm in which Barrington was a partner, but Carter continued to represent the defendant Williams. A different lawyer, Willie A. Swann, represented the defendant Shane in the second trial. At the outset of the second trial both defendants joined in a motion arguing against consolidation of the trials. Upon the court's denial of that motion, the defendant Williams entered into a plea bargain with the State. He pleaded guilty to charges of attempted sexual offenses, and the State agreed to dismiss the other charges against him in exchange for his testimony in the trial of Shane.

Williams testified at Shane's trial that he and Shane, at Shane's suggestion, took weapons to the Tahiti Health Club, that they bound the manager of the club and that they forced two female employees to engage in sexual activity with them. Shane was convicted of first degree sexual offense and attempted first degree sexual offense. A mandatory life sentence was imposed for the sexual offense. After finding two aggravating and one mitigating factor in Shane's sentencing hearing, the trial court imposed a sentence of twenty years for attempted sexual offense, which sentence was to begin at the expiration of the life term.

## II.

[1]   The defendant urges a reversal of his conviction based on error he claims the trial court committed in permitting Attorney Carter to represent Williams in the second trial. He contends that representation of Williams by Carter constituted direct conflicts of interest arising from both Carter's former representation of the defendant Shane at the bond reduction hearing and Carter's former partnership with Shane's attorney in the first trial, Carl Barrington.

The defendant Shane contends that since Attorney Carter represented him at a bond reduction hearing and in the second trial represented Williams, who testified against Shane, Carter had a direct conflict of interest. Shane contends that he revealed confidences at the time of his arrest to Carter. Shane maintains that when Carter represented a codefendant at trial who was "directly opposed" to Shane, he violated those confidences and denied Shane effective assistance of counsel.

The defendant Shane also argues that Carter's association with Carl Barrington in the law firm of Barrington, Jones, Witcover, Carter & Armstrong, P.A. caused a direct conflict. Shane contends that, just as Barrington could not have represented Williams in the second trial because Williams' interests were adverse to Shane's, Carter, Barrington's partner, was also prohibited from the representation of Williams. The defendant Shane contends that the fact that Carter left the law firm between the first and second trials did not remove the conflict.

Because we find that Attorney Carter's conduct was not sufficiently prejudicial to the defendant to entitle him to a new trial, it is not necessary to decide whether Carter violated the rules of ethics set forth by the North Carolina State Bar. It is sufficient to note that attorneys are encouraged to follow closely the dictates of the *North Carolina Code of Professional Responsibility.* Canon 9 of that code states that attorneys are to avoid even the appearance of impropriety. *North Carolina Code of Professional Responsibility,* Canon 9 (1981). The code also prohibits a lawyer from continuing in employment if the "exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client." DR5-105(B). Further, "[i]f a lawyer is required to decline employ-

ment or to withdraw from employment under DR5-105, no partner or associate of his or his firm may accept or continue such employment." DR5-105(D).

The constitutional right of a defendant to be represented by counsel in a criminal prosecution includes not only the right to obtain counsel, but also the right to have a reasonable opportunity in the light of all the circumstances to investigate, prepare and present his defense. *State v. Phillip*, 261 N.C. 263, 134 S.E. 2d 386 (1964), *cert. denied*, 377 U.S. 1003 (1964). The general rule is that assistance of counsel must be "within the range of competence demanded of attorneys in criminal cases" in order to be effective. *State v. Vickers*, 306 N.C. 90, 291 S.E. 2d 599 (1982). Those seeking to show a denial of effective assistance of counsel must meet a stringent standard of proof, as to require less would encourage convicted defendants to raise frivolous claims causing unwarranted trials of counsel. *State v. Milano*, 297 N.C. 485, 256 S.E. 2d 154 (1979).

The question whether Attorney Carter's representation of Williams entitles the defendant Shane to a new trial in the face of Carter's former representation of the defendant and Williams' testimony for the State, is governed by this Court's decision in *State v. Nelson*, 298 N.C. 573, 260 S.E. 2d 629 (1979), *cert. denied*, 446 U.S. 929 (1980). In that case an assistant public defender had originally represented both the defendant Jolly and his codefendant at trial. During the trial, however, the court found an apparent conflict between the defendants and precluded the attorney from representing both. After the appointment of new counsel, Jolly was cross-examined on the stand by his former attorney. Furthermore, the attorney argued to the jury that Jolly, his former client, and not Jolly's codefendant had committed the crime.

We refused to grant a new trial in *Nelson*, finding that Jolly failed to show actual prejudice resulting from the apparent conflict of the former attorney. We stated:

> Actual prejudice in this context means more than a defendant's having been damaged at trial by actions of his former lawyer. The actions complained of must have grown out of the former attorney-client relation. The record should show that the attorney took advantage of the former relation in

some way at the subsequent trial or that the former relation put the attorney in a better position to inflict the damage than he otherwise would have been. *See generally, United States v. Carroll,* 510 F. 2d 507 (2d Cir. 1975), *cert. denied,* 426 U.S. 923; *United States v. Press,* 336 F. 2d 1003 (2d Cir. 1964), *cert. denied,* 379 U.S. 965 (1965); *People v. Suiter,* 82 Mich. App. 214, 266 N.W. 2d 762 (1978). That there was a former attorney-client relation is not, alone, enough.

*Id.* at 592, 260 S.E. 2d at 643 (1979). The court decided in *Nelson* that the cross examination and argument to the jury by that defendant's former attorney in no way indicated that the attorney used information obtained during his representation of the defendant.

Similarly, the defendant in the case before us has shown no actual prejudice traceable to Carter's former representation of him. Unlike the situation in *Nelson,* in this case after Williams struck a plea bargain Attorney Carter took no part in the conduct of the trial. There was no evidence that he "took advantage of the former relation in some way at the subsequent trial or that the former relation put the attorney in a better position to inflict the damage than he otherwise would have been." *State v. Nelson,* 298 N.C. at 592, 260 S.E. 2d at 643 (1979). The fact that Carter represented Shane in a prior bond reduction hearing two years prior to the trial is not sufficient to show actual prejudice to the defendant Shane. Nor has the defendant shown that Carter's former association with Barrington, the defendant's lawyer in his first trial, in any way caused the defendant actual prejudice in his second trial.

Furthermore, Shane did not raise any objection to the representation of Williams by Attorney Carter at trial. Although the issue was alluded to in the first trial, no objection was raised there. The defendant failed to raise the issue at the second trial as well even though at one point he claimed, through a motion for appropriate relief, that his representation at the first trial was ineffective for reasons other than a conflict of interest.

The defendant's acquiescence to Attorney Carter's representation of Williams at trial weighs heavily upon him on appeal. As we noted in *Nelson,* objection at trial would not only show that the defendant did not acquiesce in the representation, it would

also establish a foundation for a contention of prejudice on appeal with evidence produced by means of a properly conducted *voir dire. State v. Nelson,* 298 N.C. 573, 260 S.E. 2d 629.

### III.

[2] The defendant next contends that he was denied effective assistance of counsel because his attorney at the second trial, Willie Swann, did not call witnesses who were present and able to testify for him, such as an FBI officer. The defendant claims that the failure to call this available witness might well have been enough to reestablish his character.

The defendant has not identified the witness or witnesses who were present and able to testify on his behalf. Nor has he offered evidence of what their testimony would have been if they had been called.

The assignment apparently refers to an FBI agent who was present in court, but who the defendant and his attorney apparently agreed not to call. The record reveals the following exchange:

COURT: Mr. Swann, is your witness now present?

MR. SWANN: He is, your Honor. He said he had to make a further call before he's allowed to testify in a local matter. He will be making that call right now. I've got the subpoena ready for him. I need to talk to the defendant, however, first before I issue those.

COURT: All right, sir. Let the record reflect the Court has now been in recess for 50 minutes. (Mr. Swann conferred with Mr. Shane at counsel table.)

MR. SWANN: Your Honor, if it please the Court, in talking with the defendant and after talking with the witness, the defendant chooses not to call him at this time as a character witness and, therefore, the defendant has some motions that he would like to—.

The defendant is not denied effective assistance of counsel by the failure of his counsel to call a witness when the decision not to call the witness is shown by the record to be defendant's own. *See State v. Misenheimer,* 304 N.C. 108, 282 S.E. 2d 791 (1981). This assignment is without merit.

It is appropriate to note here that we have recently called attention to *Jones v. Barnes*, --- U.S. ---, 103 S.Ct. 3308, 77 L.Ed. 2d 987 (1983), in which the Court held that defense counsel assigned to prosecute an appeal from a criminal conviction does not have a constitutional duty to raise every nonfrivolous issue requested by the defendant. *State v. Jackson*, 309 N.C. 26, 30 n. 1, 305 S.E. 2d 703 (1983). As the Supreme Court of the United States stated, "[a] brief that raises every colorable issue runs the risk of burying good arguments—those that, in the words of the great advocate John W. Davis, 'go for the jugular.' Davis, *The Argument of an Appeal*, 26 A.B.A.J. 895, 897 (1940)—in a verbal mound made up of strong and weak contentions." (Citation omitted.) *Jones v. Barnes*, --- U.S. at ---, 103 S.Ct. at 3313, 77 L.Ed. 2d at 994.

## IV.

[3] In his final assignment of error the defendant claims that life imprisonment for a nonviolent crime is cruel and unusual punishment in violation of the Eighth Amendment to the Constitution of the United States, applicable to the states through the Fourteenth Amendment. In support of his argument the defendant in his brief maintains that the sexual acts charged occurred between a person he claims sold sexual favors and himself, a man who spent several years in public service. The defendant further claims that the fact that he is black and received life imprisonment and a twenty-year sentence and the codefendant, Williams, is white and received two consecutive ten-year sentences is additional evidence of a disproportionate and excessive sentence.

The sentences imposed upon the defendant were within the statutory limits. It is within the province of the General Assembly and not the judiciary to determine the extent of punishment which may be imposed on those convicted of crime. *State v. Cradle*, 281 N.C. 198, 188 S.E. 2d 296, *cert. denied*, 409 U.S. 1047 (1972).

The defendant was convicted of first degree sexual offense and attempted first degree sexual offense. The statutes classify a first degree sexual offense as a Class B felony, G.S. 14-27.4(b). An attempted first degree sexual offense is defined as a Class F felony. G.S. 14-27.6.

The mandatory sentence under the statute for a Class B felony is life imprisonment. G.S. 14-1.1(a)(2). For a Class F felony, the presumptive sentence is six years. G.S. 15A-1340.4(f)(4). The defendant's sentence for the attempted first degree sexual offense, twenty years, is the maximum sentence available for a Class F felony. G.S. 14-1.1. As is required by the Fair Sentencing Act in G.S. 15A-1340.4(b), the trial judge made a finding that the aggravating factors outweighed the mitigating factor when he imposed greater than the presumptive sentence.

The defendant's suggestion that his sentence was cruel and unusual punishment because his codefendant, a white man, received only two consecutive ten-year sentences is without merit. The defendant's argument ignores the fact that his codefendant Williams entered a plea bargain with the State in which he agreed to plead guilty only to attempted second degree sexual offenses. We do not find the defendant's sentence in this case to be cruel or unusual punishment.

No error.