STATE OF NORTH CAROLINA v. RAYMOND WIGGINS

STATE OF NORTH CAROLINA v. RAYMOND LEE WIGGINS

No. COA03-33

(Filed 16 December 2003)

**1. Rape; Sexual Offenses— statutory rape—statutory sexual offense—amendment of indictment—age**

The trial court did not err in a multiple statutory rape and statutory sexual offense case by amending the indictments over defendant father's objection to state that defendant was "more than six years older" than the victim instead of "more than four years older," because: (1) the amendment related to defendant's age and not the manner and means by which the crime was perpetrated; (2) defendant knew his age and was therefore aware that N.C.G.S. § 14-27.7A(b), which was neither referenced in the indictments by its statute number nor quoted, did not apply to him; and (3) it would be biologically impossible for defendant to father the victim and fall within the age requirements of subsection (b), and therefore defendant could not have been misled or surprised as to the nature of the charges and the respective punishment.

**2. Jury— request for removal of juror—plain error analysis improper**

The trial court did not commit plain error in a multiple statutory rape and statutory sexual offense case by failing to remove a juror even though neither the State nor defendant requested her removal, because: (1) plain error analysis applies only to jury instructions and evidentiary matters; and (2) in the absence of an objection during jury selection, defendant's argument is waived and cannot be resurrected through plain error analysis.

**3. Rape— statutory—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the multiple statutory rape charges, because: (1) a child's uncertainty as to the time or particular day the offense charged was committed goes to the weight of the testimony rather than its admissibility; (2) the evidence established that the victim was between thirteen and fifteen years old, an essential element of statutory rape under N.C.G.S. § 14-27.7A(a), during the pertinent time she lived with defendant and that defendant engaged in

almost daily sexual intercourse with her; and (3) the victim testified that defendant was her biological father, and it was biologically impossible for defendant to be less than six years older than the victim to be her father.

### 4. Evidence— testimony—incest—sexual abuse

The trial court did not commit plain error in a multiple statutory rape and statutory sexual offense case by failing to exclude as irrelevant and/or unduly prejudicial the testimony of a pastor and a doctor, because: (1) in regard to the pastor's testimony that her sermon on the sins of incest had been directed by God through her to defendant, the testimony was not prejudicial in light of the victim's extensive testimony as to the sexual acts defendant imposed on her and the fact that defendant told the victim's aunt that he was teaching his daughter how to have sex; and (2) in regard to the doctor's testimony on female development and the effect of sexual abuse depending on the level of estrogen present in an adolescent body, the testimony was relevant since it served to explain to the jury why there would be no physical findings in someone like the victim even after years of sexual abuse.

### 5. Constitutional Law— right to unanimous verdict—failing to differentiate each individual charge in jury instructions and verdict sheet

The trial court did not violate defendant's right to a unanimous verdict in a multiple statutory rape and statutory sexual offense case by failing to specifically differentiate each individual charge in its jury instructions and on the verdict sheet, because: (1) verdict sheets do not need to match the specificity of indictments; (2) the indictments in this case which distinguished the offenses charged by their names and case numbers without pointing to any specific encounter between defendant and the victim were proper since they could be understood by the jury based on the evidence presented at trial; and (3) the trial court differentiated each instruction on two courts of statutory sexual offense and five counts of statutory rape by the applicable case number found on the indictments.

### 6. Sentencing— aggravating factors—taking advantage of position of trust and confidence

The trial court did not err in a multiple statutory rape and statutory sexual offense case by finding the aggravating factor

that defendant violated a position of trust and confidence even though defendant could have also been charged with incest between near relatives under N.C.G.S. § 14-178.

## 7. Sentencing— proportionality—parole past normal life expectancy

The trial court did not err in a multiple statutory rape and statutory sexual offense case by imposing a sentence that was allegedly excessive and disproportionate even though defendant would not be eligible for parole until past his normal life expectancy, because: (1) defendant received two concurrent sentences of 810 to 999 months, which was about half the prison term for which he could have been sentenced; and (2) in light of the acts committed by defendant to the victim over the course of several years, there was no abuse of discretion.

## 8. Constitutional Law— effective assistance of counsel—failure to show prejudice

Defendant did not receive ineffective assistance of counsel in a multiple statutory rape and statutory sexual offense case, because: (1) defendant cannot show any prejudice in light of testimony by the victim and her aunt concerning defendant's acts and admissions; and (2) there was no reasonable probability that the result of the trial would have been different absent the alleged errors committed by counsel.

Appeal by defendant from judgments dated 26 June 2002 by Judge Thomas D. Haigwood in Pasquotank County Superior Court. Heard in the Court of Appeals 15 October 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Jennie Wilhelm Mau, for the State.*

*McCotter, Ashton & Smith, P.A., by Rudolph A. Ashton, III, and Kirby H. Smith, III, for defendant-appellant.*

BRYANT, Judge.

Raymond Lee Wiggins[1] (defendant) appeals judgments dated 26 June 2002 entered consistent with a jury verdict finding him guilty of five counts of statutory rape and two counts of statutory sexual offense.

---

1. Some of the judgments list defendant's name as Raymond Wiggins and others as Raymond Lee Wiggins.

The indictments for statutory sexual offense, issued on 1 October 2001, referred to N.C. Gen. Stat. §§ 14-27.4(a)(2) and 14-27.5(a)(1) and stated that between 1 May 1998 and 30 September 1998 defendant "unlawfully, willfully and feloniously did engage in a sex offense with [R.B.], a child who is 13, 14 or 15 years old, . . . defendant being more than 4 years older than [R.B.]" The indictments for statutory rape, issued the same day, designated N.C. Gen. Stat. § 14-27.7A(a) as the statutory basis and stated that between 1 May 1998 and 30 September 1998 "defendant . . . unlawfully, willfully and feloniously did carnally know and abuse [R.B.], a child who is 13, 14 or 15 years old, . . . defendant being more than 4 years older than [R.B.]" Both the statutory sexual offense and statutory rape indictments were amended during the trial to change (1) all the statutory references to N.C. Gen. Stat. § 14-27.7A(a) and (2) the language "defendant being more than 4 years older" to "more than 6 years older" to comply with section 14-27.7A(a). Defendant objected to the amendments.

At trial, seventeen-year-old R.B. testified that when she was nine years old and in the third grade, her menstrual cycle had begun and she was placed in a sex education class for sixth graders. Having been too shy in class to ask questions, R.B. asked defendant, her biological father, to explain sex to her. Defendant did so and, a couple of days later, told R.B. "now that [she] knew what [sex] was that [she] should see how it felt" and proceeded to have sexual intercourse with her. Thereafter, defendant had sexual intercourse with R.B. "once or twice a month." When R.B. was thirteen years old, her parents separated, and R.B. lived with defendant on Meadowlands Street while her brother and sister lived with her mother. R.B. testified that after the separation "things began to get worse[]" in that defendant would have sexual intercourse with her "[f]ive times or more a week." R.B. described in detail four occasions on which defendant forced her to have sexual intercourse with him while she lived on Meadowlands Street. R.B. also testified to one time defendant performed oral sex on her and another time she had to perform oral sex on him. Once R.B. took a knife out of the kitchen drawer and told defendant to stop, but this did not deter him. Finally, when R.B. was fifteen years old, she put a knife to her wrist and again told defendant to stop because she "couldn't take it anymore." Defendant then agreed that it was over.

One day, when R.B. was home sick, defendant "got jumpy" and told R.B. to go for a walk with him. As they were walking, R.B.'s aunt drove by, stopped, and asked if they wanted a ride. During

the conversation that developed, defendant told the aunt that he had been teaching his daughter how to have sex. The aunt subsequently took R.B. to the home of R.B.'s mother. That same day, defendant came by the mother's house and insisted that the family see Pastor Randi Bryant. The Department of Social Services began its investigation soon thereafter based on an anonymous telephone call alleging incest.

Pastor Bryant testified, without objection, that R.B.'s family had requested to meet with her one afternoon in April. Pastor Bryant did not recall the year the meeting took place. During this meeting, Pastor Bryant, who did not know why defendant, R.B., and her mother had wanted to see her, began talking about love and forgiveness. R.B. began crying. The mother also became upset and started asking defendant "what was going on." Defendant did not reply. Earlier that day Pastor Bryant had held a sermon preaching on incest, at which R.B.'s family had been present. With respect to her sermon, Pastor Bryant noted that she was not looking at anyone in particular when speaking and did not know "who God was directing the message to," but she "knew that when God directs a message, it's to someone in the building."

Dr. Suzanne Starling testified as an expert in forensic pediatrics. To aid and illustrate Dr. Starling's testimony, a diagram of the genital area of the female body was introduced into evidence. Defendant did not object to the admission of the diagram. Dr. Starling explained how a female child's hymen changes as the level of estrogen in the body increases when the child develops and begins to experience menstrual cycles. Because estrogen allows the hymen "to stretch and move," a doctor "may not see any changes [due to penile penetration] at all in a hymen of a child who has already estrogenized." Dr. Starling further testified that she had examined R.B. on 12 September 2001, almost two years after the last alleged incident between defendant and R.B. The examination was normal, revealing nothing unusual. According to Dr. Starling, this finding was not inconsistent with penile penetration over a period of years in a child like R.B.

Defendant did not present any evidence. His motions to dismiss the charges based on insufficiency of the evidence were denied by the trial court.

---

The issues are whether: (I) amendment of the indictments was improper; (II) the trial court's failure to excuse juror #10 was plain error; (III) there was insufficient evidence to overcome defendant's

motions to dismiss the statutory rape charges; (IV) the testimony of Pastor Bryant and Dr. Starling should have been excluded as irrelevant and/or unduly prejudicial; (V) the trial court's failure to differentiate with more specificity each individual charge in its jury instructions and on the verdict sheet deprived defendant of a unanimous verdict; (VI) defendant's sentence was based on an improper aggravating factor and was excessive and disproportionate; and (VII) defendant received ineffective assistance of counsel.

I

[1] Defendant first argues the trial court erred in amending the indictments over his objection because defendant's age was an essential element of the offenses charged and the statute referenced in the amended indictments substantially increased the punishment he was facing.

"A bill of indictment is legally sufficient if it charges the substance of the offense and puts the defendant on notice that he will be called upon to defend against proof of the manner and means by which the crime was perpetrated." *State v. Ingram*, 160 N.C. App. 224, 225, 585 S.E.2d 253, 255 (2003); *State v. Rankin*, 55 N.C. App. 478, 480, 286 S.E.2d 119, 120 (1982). While N.C. Gen. Stat. § 15A-923(e) provides that "[a] bill of indictment may not be amended," N.C.G.S. § 15A-923(e) (2001), our Supreme Court has interpreted this provision to only prohibit amendments that substantially alter the charge set forth in the indictment, *Ingram*, 160 N.C. App. at 226, 585 S.E.2d at 255; *see also State v. Holliman*, 155 N.C. App. 120, 126, 573 S.E.2d 682, 687 (2002) ("[t]he change in an indictment is scrutinized because[] it is important that the defendant understand the charge in an indictment in order to defend himself against the allegation"). Furthermore, " '[a] change in an indictment does not constitute an amendment where the variance was inadvertent and [the] defendant was neither misled nor surprised as to the nature of the charges.' " *State v. McNair*, 146 N.C. App. 674, 676-77, 554 S.E.2d 665, 668 (2001) (quoting *State v. Campbell*, 133 N.C. App. 531, 535-36, 515 S.E.2d 732, 735 (1999)).

In this case, the amendment of the indictments relates to defendant's age, not the manner and means by which the crime was perpetrated. At trial, the language of defendant "being more than four years older than [R.B.]," found in all seven indictments, was amended to "more than six years older." The two statutory sexual offense indictments were also amended to reflect the proper statute, N.C. Gen.

Stat. § 14-27.7A(a), already found on the five statutory rape indictments. Section 14-27.7A(a) provides:

> A defendant is guilty of a Class B1 felony if the defendant engages in vaginal intercourse or a sexual act with another person who is 13, 14, or 15 years old and the defendant is at least six years older than the person . . . .

N.C.G.S. § 14-27.7A(a) (2001). Defendant contends that because the previous language of "more than four years older" would have led defendant to believe he was subject to the lower punishment under N.C. Gen. Stat. § 14-27.7A(b), which applies to defendants who are "more than four but less than six years older than" the victim, the trial court erred in amending the indictments. N.C.G.S. § 14-27.7A(b) (2001). We disagree. Defendant knew his age and was therefore aware that section 14-27.7A(b), which was neither referenced in the indictments by its statute number nor quoted, did not apply to him. As the trial court's observations indicate, defendant was "in his lower thirties if not older" at the time of trial. In addition, it would be biologically impossible for defendant to father R.B. and fall within the age requirements of subsection (b). Accordingly, defendant could not have been misled or surprised as to the nature of the charges and the respective punishment. Because of this holding, we do not address defendant's additional argument that the *original* indictments were invalid.[2]

## II

**[2]** Defendant next contends the trial court committed plain error in failing to excuse juror #10 even though neither the State nor defendant requested her removal. Our Supreme Court has held that "plain error analysis applies only to jury instructions and evidentiary matters." *State v. Wiley*, 355 N.C. 592, 615, 565 S.E.2d 22, 39-40 (2002), *cert. denied*, 537 U.S. 1117, 154 L. Ed. 2d 795 (2003). Accordingly, in the absence of an objection during jury selection, defendant's argument is waived and cannot be resurrected through plain error analysis. *See id.* at 616, 565 S.E.2d at 40.

## III

**[3]** Defendant also assigns error to the trial court's denial of his motions to dismiss the statutory rape charges.

---

2. For preservation purposes, defendant also raises the issue of the constitutionality of short-form indictments. Based on *State v. Wallace*, 351 N.C. 481, 528 S.E.2d 326 (2000), we overrule this assignment of error.

When a defendant moves for dismissal, the trial court is to
determine only whether there is substantial evidence of each
essential element of the offense charged and of the defendant
being the perpetrator of the offense. . . . Substantial evidence is
"such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion."

*State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991) (cita-
tions omitted). The trial court must consider the evidence in the light
most favorable to the State, giving the State the benefit of every rea-
sonable inference. *State v. Patterson*, 335 N.C. 437, 450, 439 S.E.2d
578, 585 (1994).

### Timing

Defendant argues the evidence was insufficient to establish the
statutory rape offenses charged because R.B. did not testify to the
specific dates when the alleged acts occurred. In his brief to this
Court, defendant does not provide any authority to support this posi-
tion. *See* N.C.R. App. P. 28(b)(6) (assignments of error in support of
which there is "no . . . authority cited, will be taken as abandoned").
Moreover, established case law provides that:

"[A] child's uncertainty as to the time or particular day the
offense charged was committed goes to the weight of the testi-
mony rather than its admissibility, and nonsuit may not be
allowed on the ground that the State's evidence fails to fix any
definite time when the offense was committed where there is
sufficient evidence that the defendant committed each essential
act of the offense."

*State v. Brothers*, 151 N.C. App. 71, 81, 564 S.E.2d 603, 609 (2002)
(quoting *State v. Effler*, 309 N.C. 742, 749, 309 S.E.2d 203, 207 (1983)),
*appeal dismissed and disc. review denied*, 356 N.C. 681, 577 S.E.2d
895 (2003). In this case, the evidence established that R.B. was
between thirteen and fifteen years old, an essential element of statu-
tory rape under section 14-27.7A(a), during the time she lived with
defendant on Meadowlands Street and defendant engaged in almost
daily sexual intercourse with her. Accordingly, there was substantial
evidence to withstand defendant's motions to dismiss.

### Age

In addition, defendant asserts the motion to dismiss should have
been granted because absent proof of his age, the State failed to
establish an essential element of the offenses charged. *See* N.C.G.S.

§ 14-27.7A(a) (requiring the defendant to be more than six years older than the victim). We note that R.B. testified defendant was her biological father. As it was biologically impossible for defendant to be less than six years older than R.B. and to be her father, we conclude that there was sufficient evidence of defendant's age to overcome the motions to dismiss.

IV

**[4]** Defendant further contends testimony by Pastor Bryant and Dr. Starling should have been excluded as irrelevant and/or unduly prejudicial.

### Pastor Bryant

Defendant assigns as plain error the admission of Pastor Bryant's "testi[mony] that her sermon on the sins of incest had been directed by God, through her, to . . . [d]efendant." To the extent defendant raised arguments in his brief beyond the scope of this assignment of error, they are not properly before this Court. *See* N.C.R. App. P. 10(a) ("the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal"). Defendant argues the pastor's comment was irrelevant and unduly prejudicial. Assuming the testimony was indeed irrelevant, we nevertheless conclude that it was not prejudicial. R.B. testified extensively as to the sexual acts defendant had imposed on her; defendant had told R.B.'s aunt that he was teaching his daughter how to have sex; and that same day, defendant took his family to see Pastor Bryant. In light of this evidence establishing incest, defendant has not met the burden required to show plain error. *See State v. Parker*, 350 N.C. 411, 427, 516 S.E.2d 106, 118 (1999) (plain error is error " 'so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached' ") (citation omitted).

### Dr. Starling

Next, defendant argues the trial court committed plain error by allowing irrelevant testimony of Dr. Starling on female development and the effect of sexual abuse depending on the level of estrogen present in an adolescent body. As Dr. Starling's examination of R.B. revealed no unusual findings, defendant argues the testimony neither proved nor disproved sexual abuse. Although this may be so, we nevertheless hold that Dr. Starling's testimony was relevant because it served to explain to the jury why there would be no phys-

ical findings in someone like R.B. even after years of sexual abuse. *See* N.C.G.S. § 8C-1, Rule 401 (2001) (" '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). Accordingly, this assignment of error is overruled.

V

**[5]** Defendant also asserts the trial court's failure to specifically differentiate each individual charge in its jury instructions and on the verdict sheet deprived him of a unanimous verdict. " 'Where there is a fatal defect in the indictment, verdict or judgment which appears on the face of the record, a judgment which is entered notwithstanding said defect is subject to a motion in arrest of judgment.' " *State v. Tucker*, 156 N.C. App. 53, 59, 575 S.E.2d 770, 774 (2003) (citation omitted). Our "statutes do not specify what constitutes a proper verdict sheet[,] . . . [n]or have our Courts required the verdict forms to match the specificity expected of the indictment." *State v. Floyd*, 148 N.C. App. 290, 295, 558 S.E.2d 237, 240-41 (2002). A verdict is deemed sufficient if it "can be properly understood by reference to the indictment, evidence and jury instructions." *State v. Connard*, 81 N.C. App. 327, 336, 344 S.E.2d 568, 574 (1986), *aff'd*, 319 N.C. 392, 354 S.E.2d 238 (1987) (per curiam); *see also State v. Holden*, 160 N.C. App. 503, 507-08, 586 S.E.2d 513, 516-17 (2003) (analyzing the defendant's contention that he was deprived of a unanimous verdict by reviewing the record, transcript, indictments, jury instructions, and verdict sheets). Normally, where the defendant appeals based on the content of the verdict sheet but failed to object when the verdict sheet was submitted to the jury, any error will not be considered prejudicial unless the error is fundamental. *State v. Gilbert*, 139 N.C. App. 657, 672-74, 535 S.E.2d 94, 103 (2000) (applying plain error analysis to verdict sheet issue because the defendant did not object to the verdict sheet). Violations of constitutional rights, such as the right to a unanimous verdict, however, are not waived by the failure to object at trial and may be raised for the first time on appeal. *Holden*, 160 N.C. App. at 506-07, 586 S.E.2d at 516; *see* N.C. Const. art. I, § 24 ("[n]o person shall be convicted of any crime but by the unanimous verdict of a jury in open court").

In this case, the trial court instructed the jury on two counts of statutory sexual offense and five counts of statutory rape, differentiating each instruction by the applicable case number found on the indictments. Likewise, the verdict sheets submitted to the jury iden-

tified the seven offenses only by the felony charged (statutory sexual offense or statutory rape) and their respective case numbers. Since verdict sheets do not need to match the specificity of indictments, *Floyd*, 148 N.C. App. at 295, 558 S.E.2d at 240-41, and the indictments in this case, which distinguished the offenses charged by their names and case numbers without pointing to any specific encounter between defendant and R.B., were proper, *see* N.C.G.S. §§ 15-144.1, -144.2 (2001) (requirements for short-form sexual offense indictments and statutory rape indictments), the verdict sheets did not lack the required degree of specificity needed for a unanimous verdict if they could be properly understood by the jury based on the evidence presented at trial, *see Connard*, 81 N.C. App. at 336, 344 S.E.2d at 574. Since R.B. testified to only two incidents qualifying as statutory sexual offenses under section 14-27.7A(a), there was no possibility the jury could not have been unanimous in its vote on these two offenses. *Cf. Holden*, 160 N.C. App. at 508, 586 S.E.2d at 516-17 (awarding new trial for violation of the defendant's right to a unanimous jury where the trial court did not differentiate between the ten counts of rape submitted to the jury and the jury returned guilty verdicts on only two counts). As to the charges of statutory rape, R.B. testified to four specific occasions she could describe in detail during which defendant had sexual intercourse with her when she was between the ages of thirteen and fifteen. R.B. also testified that defendant had sexual intercourse with her five or more times a week during this two-year period. Thus, where seven offenses (two statutory sexual offense and five statutory rape) were charged in the indictments, and based on the evidence presented at trial, the jury returned seven guilty verdicts, there was no danger of a lack of unanimity between the jurors with respect to the verdict. *See Connard*, 81 N.C. App. at 336, 344 S.E.2d at 574.

## VI

Defendant next assigns error with respect to his sentencing.

### *Aggravating Factor*

**[6]** Defendant argues, because he could also have been charged with incest between near relatives under N.C. Gen. Stat. § 14-178, the trial court erred in finding the aggravating factor of violating a position of trust and confidence. In support of this argument, defendant relies on the holding in *State v. McGuire* that "it is error to use as an aggravating factor evidence of an element of a joinable offense with which [the] defendant has not been charged." *State v. McGuire*, 78 N.C. App.

285, 292, 337 S.E.2d 620, 625 (1985). Not only has *McGuire* since been called into question and determined to be unsupported by the weight of the authority, *see State v. Jewell*, 104 N.C. App. 350, 354, 409 S.E.2d 757, 760 (1991), *aff'd*, 331 N.C. 379, 416 S.E.2d 3 (1992) (per curiam), but the statute underlying *McGuire*, N.C. Gen. Stat. § 15A-1340.4, has been repealed and replaced with N.C. Gen. Stat. § 15A-1340.16 omitting any reference to joinable offenses. We further note that the *McGuire* requirement only applied to the aggravating factor relating to prior convictions, N.C.G.S. § 15A-1340.4(a)(1)(o) (1993) (repealed effective January 1, 1995), and not to any of the other enumerated aggravating factors such as taking advantage of a position of trust or confidence, N.C.G.S. § 15A-1340.4(a)(1)(n) (1993). As such, this argument is without merit.

### *Excessive Sentence*

**[7]** Defendant also contends the trial court imposed a sentence that was excessive and disproportionate because defendant would not be eligible for parole until past his normal life expectancy. Specifically, defendant argues that the General Assembly, not the trial court, decides the extent of the punishment. *See State v. Shane*, 309 N.C. 438, 445, 306 S.E.2d 765, 770 (1983). Defendant, however, concedes that "our legislature has vested the trial judge with broad discretion in deciding whether multiple sentences should be served consecutively or concurrently." *State v. Thompson*, 139 N.C. App. 299, 310, 533 S.E.2d 834, 842 (2000) (citing N.C.G.S. § 15A-1354(a) (1999)).

In the case *sub judice*, the trial court had the statutory authority to enter consecutive sentences of up to 270 to 333 months for each of the seven offenses of which defendant was found guilty, yielding a combined maximum sentence of 1,890 to 2,331 months. The trial court applied the aggravated sentence of 270 to 333 months but consolidated two convictions for judgment and sentencing and allowed three sentences to run concurrently with the remaining three sentences. As a result, defendant received two concurrent sentences of 810 to 999 months, about half the prison term for which he could have been sentenced. In light of the acts committed by defendant to R.B. over the course of several years, we do not find any abuse of discretion with respect to this sentence.

### VII

**[8]** Finally, defendant assigns as error the ineffective assistance received from his counsel.

An ineffective assistance of counsel claim is subject to a two-part test: the defendant must show (1) his counsel's performance "fell below an objective standard of reasonableness" in that his "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *Strickland v. Washington*, 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 693 (1984); *State v. Lee*, 348 N.C. 474, 491, 501 S.E.2d 334, 345 (1998), and (2) he was prejudiced by the error such that "a reasonable probability exists that the trial result would have been different absent the error," *Lee*, 348 N.C. at 491, 501 S.E.2d at 345. "[I]f a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient." *State v. Braswell*, 312 N.C. 553, 563, 324 S.E.2d 241, 249 (1985).

Under the facts of this case, defendant cannot show such prejudice. In light of R.B.'s and her aunt's testimony concerning defendant's acts and admissions, there was no reasonable probability that the result of the trial would have been different absent the alleged errors committed by counsel. Accordingly, this assignment of error is overruled.

No error.

Judges McCULLOUGH and TYSON concur.