STATE OF NORTH CAROLINA v. ERNEST LEE JUNIOR PETTIS

No. COA06-1380

(Filed 18 September 2007)

**1. Rape; Sexual Offenses— sexual battery—not a lesser included offense of rape**

The offense of sexual battery under N.C.G.S. § 14-27.5A(a)(2) is not a lesser included offense of second-degree rape under N.C.G.S. § 14-27.3(a)(2). Sexual battery has a purpose element that requires the act to be completed for sexual arousal, gratification, or abuse, which is not an element of second-degree rape.

**2. Rape; Assault— assault on a female—not a lesser included offense of statutory rape**

The trial court did not err by denying defendant's requested instruction on the offense of assault on a female as a lesser included offense of statutory rape. The crime of assault on a female requires proof of an assault, whereas statutory rape does not. Assault on a female requires proof that defendant is male, which is not required for statutory rape.

**3. Appeal and Error— preservation of issues—no objection at trial—no assignment of error in brief**

Defendant did not preserve for appeal the question of whether the trial court erred by admitting testimony about a DNA examination and report by a nontestifying SBI agent. Defendant not only did not object to the jury receiving the report during deliberations, he consented, and further, did not assign error in his brief.

STATE v. PETTIS

[186 N.C. App. 116 (2007)]

**4. Constitutional Law— Confrontation Clause—testimony about DNA analysis—opinion based on tests by others**

Defendant's Confrontation Clause rights were not violated when one SBI agent testified about a DNA analysis performed by another agent. It is well established that there is no violation when an expert bases an opinion on tests performed by others and defendant has the opportunity to cross-examine the testifying expert about the basis of his or her opinion. Although the agent was not formally tendered as an expert witness, he can still testify as an expert.

**5. Evidence— statutory rape—defendant's age—booking statement—other testimony**

Any error was harmless where the defendant's pre-Miranda warning booking statement about his age was admitted in a statutory rape prosecution. There was other testimony about defendant's age from his mother.

**6. Constitutional Law— instructions—unanimity—no error**

The trial court's instructions on unanimity in a statutory rape prosecution were not erroneous.

Appeal by defendant from judgment entered 28 February 2006 by Judge Nathaniel J. Poovey in Cleveland County Superior Court. Heard in the Court of Appeals 20 August 2007.

*Attorney General Roy Cooper, by Assistant Attorney General Amy C. Kunstling, for the State.*

*Rudolf Widenhouse & Fialko, by M. Gordon Widenhouse, Jr., for defendant appellant.*

McCULLOUGH, Judge.

Defendant appeals a judgment entered after a jury verdict of guilty of two counts of statutory rape, one count of second-degree rape and one count of taking indecent liberties with a child. We determine there was no prejudicial error.

FACTS

Ernest Lee Junior Pettis ("defendant") was indicted for two counts of statutory rape, one count of second-degree rape, and one count of taking indecent liberties with a child. The State presented evidence at trial which tended to show the following:

A.W. was born on 1 June 1990. In December 2003, she was living at the Above and Beyond group home in Kings Mountain. Above and Beyond is a Level III facility that provides twenty-four-hour supervision.

In December 2003, A.W. ran away from the group home and encountered defendant. Defendant told her to follow him, which she did. They went into the woods. After they had been talking in the woods for awhile, a man named Flinto picked up A.W. and defendant and took them to his house. At Flinto's house, A.W. had sex with Flinto because defendant told her that in order to stay at Flinto's house, A.W. had to have sex with Flinto.

From Flinto's house, A.W. and defendant went to Nancy Gladden's house, where they stayed for a couple of days. A.W. told defendant she was in the custody of DSS. She also told him she was fifteen or sixteen. A.W. testified that defendant told her he had a child her age. She also testified that defendant told her he was "twenty-something." A.W. and defendant had sex at Ms. Gladdens' house. A.W. estimated that she and defendant had sex there four to ten times. Defendant did not wear a condom. The police located A.W. at Ms. Gladden's home. Defendant, who hid in the basement, had told A.W. not to mention anything about him.

When the police returned A.W. to the group home, A.W. said she had been raped. A.W. testified at trial that she had sex with defendant because she wanted to, and defendant did not force her to have sex with him.

A.W. was taken to the Kings Mountain Hospital's emergency room for a rape kit exam. Nurse Audrey Baker examined A.W. A.W. told Nurse Baker she had run away from the group home and met a person she did not know. A.W. said she was taken to one place in Bessemer City and raped and then taken to another place in Kings Mountain and raped repeatedly over several days. Nurse Baker observed that A.W. had a brownish-yellowish bruise on her left breast. A.W.'s genital, vaginal, and rectal exam results were normal.

Hope Dorsey worked at the group home the night A.W. ran away. Ms. Dorsey testified that when she last saw A.W., A.W. was wearing gray jogging pants, a jacket, and shoes. A.W. was wearing a different outfit when the police brought her back to the group home. Kings Mountain police officers went to Nancy Gladden's house. Ms.

STATE v. PETTIS

[186 N.C. App. 116 (2007)]

Gladden consented to a search of the house. Captain Derek Johnson found a pair of gray jogging pants in the washing machine. There was no water in the washing machine, and the pants were not wet. Ms. Dorsey recognized the pants as being the pair A.W. was wearing when Ms. Dorsey last saw her before A.W. ran away. The gray pants were sent to the SBI lab for testing. Special Agent Jed Taub, who was received without objection as an expert in forensic serology, forensic DNA analysis, and forensic biology, testified that he found spermatozoa and semen and epithelial cells on the crotch of the pants. This was consistent with being vaginal drainage of a mixture of vaginal fluid and spermatozoa and semen. The predominant DNA profile obtained from the cutting from the crotch of the pants matched defendant's DNA profile.

A.W. identified defendant from a photo array, and subsequently, defendant was arrested. As part of the booking process, defendant told the arresting officer that his date of birth was 1 February 1969 and he was thirty-four years old.

William Boyd, who was born on 21 January 1959, testified that he goes by the name Flinto. Mr. Boyd said he had never seen A.W. prior to court, and he denied having sex with her. Mr. Boyd testified that defendant "might have brought a young lady over to the house." He said defendant and the girl were at his house for a few hours and were hugging. He said he then drove them to Monroe Avenue.

The jury found defendant guilty of two counts of statutory rape, one count of second-degree rape, and one count of taking indecent liberties with a child. Defendant appeals.

I.

[1] Defendant contends the trial court erred in denying his requested instruction on the offense of sexual battery because sexual battery is a lesser included offense of second-degree rape. We disagree.

The North Carolina Supreme Court has defined what a lesser included offense is as follows:

[T]he *definitions* accorded the crimes determine whether one offense is a lesser included offense of another crime. In other words, all of the essential elements of the lesser crime must also be essential elements included in the greater crime. If the lesser crime has an essential element which is not completely covered by the greater crime, it is not a lesser included offense.

*State v. Weaver*, 306 N.C. 629, 635, 295 S.E.2d 375, 378-79 (1982) (citation omitted), *overruled in part on other grounds by State v. Collins*, 334 N.C. 54, 61, 431 S.E.2d 188, 193 (1993).

We determine the offense of sexual battery under N.C. Gen. Stat. § 14-27.5A(a)(2) (2005), is not a lesser included offense of second-degree rape under N.C. Gen. Stat. § 14-27.3(a)(2) (2005). Second-degree rape under N.C. Gen. Stat. § 14-27.3(a)(2) provides:

> (a) A person is guilty of rape in the second degree if the person engages in vaginal intercourse with another person:
>
> . . . .
>
> (2) Who is mentally disabled, mentally incapacitated, or physically helpless, and the person performing the act knows or should reasonably know the other person is mentally disabled, mentally incapacitated, or physically helpless.

*Id.* The sexual battery statute provides, in pertinent part:

> (a) A person is guilty of sexual battery if the person, for the purpose of sexual arousal, sexual gratification, or sexual abuse, engages in sexual contact with another person:
>
> . . . .
>
> (2) Who is mentally disabled, mentally incapacitated, or physically helpless, and the person performing the act knows or should reasonably know that the other person is mentally disabled, mentally incapacitated, or physically helpless.

N.C. Gen. Stat. § 14-27.5A(a)(2) (2005). Therefore, the offense of sexual battery under N.C. Gen. Stat. § 14-27.5A(a)(2) has a purpose element, requiring the act be completed for the purpose of sexual arousal, sexual gratification, or sexual abuse that is not an element of second-degree rape under N.C. Gen. Stat. § 14-27.3(a)(2). Accordingly, sexual battery under N.C. Gen. Stat. § 14-27.5A(a)(2) is not a lesser included offense of second-degree rape under N.C. Gen. Stat. § 14-27.3(a)(2) and we disagree with defendant.

## II.

[2] Defendant contends the trial court erred in denying his requested instruction on the offense of assault on a female because assault on a female is a lesser included offense of statutory rape. We disagree.

As explained above, "[i]f the lesser crime has an essential element which is not completely covered by the greater crime, it is not a lesser included offense." *Weaver*, 306 N.C. at 635, 295 S.E.2d at 379. The crime of assault on a female under N.C. Gen. Stat. § 14-33(c)(2) (2005) has essential elements that are not covered by the crime of statutory rape under N.C. Gen. Stat. § 14-27.7A(a) (2005). First, the crime of assault on a female requires proof of an assault, N.C. Gen. Stat. § 14-33(c)(2), whereas statutory rape does not require proof of an assault. N.C. Gen. Stat. § 14-27.7A(a). Second, the crime of assault on a female requires proof that the defendant is a male, N.C. Gen. Stat. § 14-33(c)(2), which the crime of statutory rape does not require. N.C. Gen. Stat. § 14-27.7A(a). Accordingly, we disagree with defendant.

## III.

[3] Defendant contends the trial court erred by admitting the testimony of an SBI agent regarding the DNA examination and report of a non-testifying SBI agent in violation of defendant's constitutional right to confrontation and the rules of evidence. We disagree.

With regard to the DNA report, defense counsel was afforded the opportunity to formally object to the jury receiving the report during deliberations. The trial court asked defendant's counsel whether he wished to be heard on the matter. Not only did defense counsel fail to object to the jury receiving this document, he consented. The following exchange occurred:

> [DEFENSE COUNSEL]: I don't know if they just want the specific DNA report o[r] if they want the other laboratory report. I would continue [sic] to the Court to send them both back.

> THE COURT: Do ya'll have any objections to sending all the exhibits back?

> [PROSECUTOR]: No, Sir.

> . . . .

> [DEFENSE COUNSEL]: I don't have any objection. If [the prosecutor] and I could just go through those documents, just very quickly make sure that we think everything is in there that is a document.

Defense counsel failed to object and his argument has not been preserved on appeal. N.C. R. App. P. 10(b)(1) (2007). Further, defense

counsel did not assign error in his appellate brief to the jury receiving the DNA report during deliberations. N.C. R. App. P. 10(a). This assignment of error is dismissed.

**[4]** At trial, SBI Agent David Freeman testified about a DNA analysis that was performed by Agent Jenny Elwell on a cutting taken from the gray pants recovered from Ms. Gladden's house. Agent Elwell did not testify at trial because she was in Seattle, Washington, attending a conference. Agent Freeman's opinion was based on Agent Elwell's report and notes. Defendant objected at trial to Agent Freeman's testimony citing *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177 (2004). Defendant stated that the testimony violated his Sixth Amendment Confrontation Clause rights, as well as N.C. Gen. Stat. § 8C-1, Rules 702 and 703. The trial court overruled defendant's objection. On appeal, defendant contends that Agent Freeman's testimony violated his Confrontation Clause rights and was inadmissible hearsay.

We determine defendant's Confrontation Clause rights were not violated. "[I]t is well established [that there is no violation of a defendant's right of confrontation under the rationale of *Crawford* when] an expert . . . base[s] an opinion on tests performed by others in the field and [d]efendant was given an opportunity to cross-examine [the testifying expert] on the basis of his opinion[.]" *State v. Delaney*, 171 N.C. App. 141, 144, 613 S.E.2d 699, 701 (2005). Although the State did not formally tender Agent Freeman as an expert witness, he can still testify as an expert. *See State v. White*, 340 N.C. 264, 293-94, 457 S.E.2d 841, 858 ("While the better practice may be to make a formal tender of a witness as an expert, such a tender is not required."), *cert. denied*, 516 U.S. 994, 133 L. Ed. 2d 436 (1995). Accordingly, we disagree with defendant.

### IV.

**[5]** Defendant contends the trial court erred in overruling his objection to his statement about his age made during a custodial interrogation without the benefit of *Miranda* warnings, in violation of his constitutional right to be free from self-incrimination. We disagree.

At the time of defendant's arrest, Officer K.L. Putnam of the Kings Mountain Police Department asked defendant questions, including what defendant's date of birth was, as part of the booking process. Defendant objected at trial to allowing Officer Putnam to testify what defendant said his date of birth was, arguing that the statement was

obtained in violation of his *Miranda* rights and should therefore be suppressed. The trial court overruled this objection and denied the motion to suppress. On appeal, defendant challenges this ruling.

After reviewing the record and transcript, we determine that any error by the trial court was harmless beyond a reasonable doubt. N.C. Gen. Stat. § 15A-1443(b) (2005). Defendant's mother testified at trial that she gave birth to defendant on 1 February 1969. Therefore, even if Officer Putnam's testimony was completely disregarded, there was other evidence of defendant's date of birth. Accordingly, we disagree with defendant.

## V.

[6] Defendant contends the trial court's jury instructions failed to ensure that the jury's verdicts were unanimous. We disagree.

In determining whether a defendant has been unanimously convicted by a jury, our courts have looked at many factors including: (1) whether defendant raised an objection at trial regarding unanimity; (2) whether the jury was instructed on all issues, including unanimity; (3) whether separate verdict sheets were submitted to the jury for each charge; (4) the length of time the jury deliberated and reached a decision on all counts submitted to it; (5) whether the record reflected any confusion or questions as to jurors' duty in the trial; and (6) whether, if polled, each juror individually affirmed that he or she had found defendant guilty in each individual case file number. *See State v. Lawrence*, 360 N.C. 368, 376, 627 S.E.2d 609, 613 (2006).

Here, we determine there was no problem with the unanimity of the jury's verdicts. The jury was instructed on all the issues, including unanimity. The trial court states that the jury's verdicts must be unanimous by stating, "You may not return a verdict until all 12 jurors agree unanimously." Separate verdict sheets were submitted for each charge. In addition, two verdict sheets were used for the two statutory rape charges and were differentiated by the date of the alleged offense. Further, the record does not reflect that the jury was confused. Accordingly, we disagree with defendant.

No prejudicial error.

Chief Judge MARTIN and Judge TYSON concur.